## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**AINSTEIN AI, INC.,**

      **Plaintiff,**

      **v.**                                                    **Case No. 23-2166-DDC-TJJ**

**ADAC PLASTICS, INC.,**

      **Defendant.**

---

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on Plaintiff Ainstein AI, Inc.'s Emergency Motion for Expedited Discovery (ECF No. 5). Pursuant to Fed. R. Civ. P. 16, 26, 33, and 34, Plaintiff moves for expedited discovery in connection with Plaintiff's Emergency Motion for Preliminary Injunction (ECF No. 3). Specifically, Plaintiff requests a forensic examination of the computers, storage devices and personal cellphones of three Defendant ADAC Plastics, Inc. ("ADAC") employees and the individual at ADAC responsible for its relationship with D3, the subcontractor that worked on certain Proximity Access developments. Plaintiff argues expedited discovery is necessary to preserve evidence of misappropriation of Plaintiff Ainstein AI, Inc.'s ("Ainstein") trade secret files. Defendant opposes the motion, arguing Plaintiff has not demonstrated why early or expedited discovery is justified. For the reasons discussed below, the Court will grant Plaintiff's motion in part, subject to certain conditions.

### I.     Relevant Background from Plaintiff's Amended Verified Complaint

Plaintiff Ainstein is a business focusing on the development and commercialization of radar technology applications for manufacturing and industrial use. Zongbo Wang is the founder and President of Ainstein. Defendant ADAC is a company that supplies mechatronic vehicle

1

access systems to some of the largest automotive brands in the world.  In July 2019, Plaintiff and Defendant entered into a Non-Disclosure Agreement and commenced discussions about working together to design, develop, and manufacture innovative radar-based sensing solutions for use in the international automotive marketplace.

After some work together and collaboration, on February 25, 2021, Plaintiff and Defendant entered into a nonbinding Memorandum of Understanding for the formation of a joint venture.  On June 1, 2021, Plaintiff and Defendant entered into a Limited Liability Company Agreement ("the LLC Agreement") to form a Delaware LLC called RADAC, LLC ("RADAC"), to act as the joint venture entity.  The members of RADAC are Plaintiff (with a 51% interest) and Defendant (with a 49% interest). Under a related Contribution Agreement, Plaintiff agreed to contribute its intellectual property, including radar design technology and expertise to support RADAC's product development.  This included all of Plaintiff's intellectual property related to light and commercial vehicle applications using millimeter wave radar for vehicle access, advanced driver assistance systems, and other autonomous applications.  It further included royalty-free use of two pending and approved patented inventions as well as trade secret information, proprietary designs, and other highly confidential technical information.  Defendant agreed to contribute to RADAC market access to large automobile original equipment manufacturers, to provide capital as needed up to five million dollars, and to develop business engagement.

Also pursuant to the Contribution Agreement, Plaintiff licensed its intellectual property to RADAC for its exclusive use in light and commercial vehicle applications for the duration of the LLC Agreement.  The LLC Agreement also set forth the members' agreement to forego any independent radar-related product development in the light vehicle and commercial vehicle industries outside of the joint venture, for as long as the joint venture existed and in some cases

for twelve months thereafter.  Plaintiff uploaded its intellectual property onto a Google drive owned and managed by Plaintiff.  Plaintiff gave the RADAC team access to the drive.

In July 2021, RADAC agreed to fund a subcontractor, D3, through RADAC's budget to assist with the development of certain radar-enabled Proximity Access technology set to be launched in 2023.  RADAC Board Members agreed RADAC would incur the expense to pay D3 for its assistance with research and development of the radar-based Proximity Access technology.  The D3 invoices were paid by Defendant as part of its capital commitment, but the expense of those payments was carried on RADAC's books.

In September 2022, Plaintiff and Defendant's business relationship soured.  One of Plaintiff's top engineers resigned due to poor treatment by Defendant and in November 2022, Defendant unilaterally fired the RADAC General Manager without consulting Plaintiff or its representatives.  Shortly after discovering this termination, Plaintiff directed its engineers to suspend their RADAC related development work and removed Defendant's ability to access the Google Drive containing its intellectual property.  Plaintiff and Defendant entered into discussions to dissolve RADAC and compensate Plaintiff for early dissolution and payment of outstanding leased employee and expense invoices.

Unbeknownst to Plaintiff, on October 31, 2022, and November 8, 2022, Defendant's Senior Electrical Engineer, Anne Adamczyk, with the domain name aadamczyk@automotive.com, downloaded 52,587 files containing Plaintiff's intellectual property from the Google Drive.  On October 31, 2022, Defendant's Project Manager, Craig Johnson, with the domain name cjohnson@adacautomotive.com, downloaded 4 files containing Plaintiff's intellectual property from the Google Drive.  On November 4, 2022, Defendant's Lead Electrical Engineer, Trent

Wells, with the domain name twells@adacautomotive.com, downloaded 26,876 files containing Plaintiff's intellectual property from the Google Drive.

Plaintiff alleges Defendant misappropriated trade secrets under state and federal law, engaged in unfair competition, and breached contractual non-compete and confidentiality agreements as well as the duty of good faith and fair dealing (ECF No. 25).[1] Concurrent with the original Complaint, Plaintiff filed an Emergency Motion for Preliminary Injunction (ECF No. 3) to enjoin Defendant from retaining or using what Plaintiff claims are mass-downloaded trade secrets, from breaching the Agreement's non-compete and confidentiality provisions, and to require specific performance of certain of Defendant's obligations to RADAC.

Defendant disputes Plaintiff's key allegations. Defendant contends Plaintiff gave Defendant's employees unfettered access with no restrictions to the share drive; Plaintiff named the share drive the "RADAC Ainstein-ADAC" share drive, not the "Ainstein share drive;" and Defendant uploaded numerous of its own confidential and proprietary files to the same share drive. Defendant contends that based on these actions, even assuming the downloaded files contained trade secrets, Plaintiff does not own the alleged files and what Plaintiff complains of in its Verified Complaint is permitted by the LLC Agreement and by Plaintiff's own conduct.

## II.    Summary of Expedited Discovery Requested by Plaintiff and Defendant's Opposition

Plaintiff moves for expedited discovery in connection with Plaintiff's Emergency Motion for Preliminary Injunction (ECF No. 3).  Specifically, Plaintiff requests a forensic examination of the computers, storage devices, and cellphones of three ADAC employees and the individual at

---

[1] In its Verified Complaint, Plaintiff originally prayed for preliminary and permanent injunctive relief *and damages*. (ECF No. 1 at ¶¶ 96, 101, 107). The Amended Verified Complaint omits the claims for monetary damages, without prejudice to asserting those damage claims in arbitration.

ADAC responsible for its relationship with D3,[2] the subcontractor that assisted with research and development of radar-based Proximity Access technology.

Defendant argues Plaintiff offers nothing more than conclusory assertions that there may be some evidence of wrongdoing, which is insufficient to make the strong showing, or even the good cause showing, necessary to justify expedited discovery. Defendant also argues expedited discovery is not necessary because Defendant has implemented and will continue to implement a litigation hold, and Defendant will comply with all of its preservation obligations, including its obligation sunder Fed. R. Civ. P. 37(e).

## III.   Analysis

### A.  Good Cause Exists for Expedited Discovery

"As a general rule, discovery may not commence before the parties have conferred as required by Rule 26(f) of the Federal Rules of Civil Procedure."[3]   In its exercise of broad discretion, the Court may alter the timing of discovery.[4]  "A party that seeks expedited discovery in advance of a Rule 26(f) conference has the burden of showing good cause for the requested

---

[2] In its Memorandum in Opposition to Plaintiff's Motion (ECF No. 28, at 2), Defendant noted that it does not have a separate server for the "D3 work," rather it has one server for its customer, supplier, and other business data and files. Therefore, Defendant objected that Plaintiff was effectively seeking to have Defendant's entire server forensically imaged. Plaintiff has subsequently clarified, however, that "Plaintiff does not seek an image of Defendant's entire server. Rather, aside from the devices of the three downloaders identified in the Complaint, it seeks images only from the custodian primarily responsible for Defendant's relationship with D3, which Plaintiff believes is Keith Scheiern." (ECF No. 33, at 1, n. 1).

[3] *Thermal Sols., Inc. v. Imura Int'l U.S.A. Inc.*, No. 08-CV-2220-JWL-DJW, 2008 WL 2561098, at *1 (D. Kan. June 26, 2008).

[4] *Id.*

departure from usual discovery procedures."[5]   In applying the good cause standard, the Court "must weigh the need for the early discovery by considering the following factors: '(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.'"[6]   Good cause for early discovery frequently exists in cases involving claims of infringement and unfair competition. [7]

Considering the above factors, the Court finds Plaintiff has demonstrated good cause for expedited discovery. First, Plaintiff's motion for preliminary injunction is currently pending. As previously noted, Plaintiff moves for expedited discovery in connection with Plaintiff's Emergency Motion for Preliminary Injunction (ECF No. 3), filed on April 18, 2023. Second, as discussed in more detail *infra*, the Court finds the expedited discovery requested, as further limited by this Order, is reasonable and proportional to the needs of this case.

---

[5] *Alpine Atl. Asset Mgmt. AG v. Comstock*, No. CIVA07-2595-JWL-DJW, 2008 WL 618627, at *1 (D. Kan. Mar. 3, 2008) (*quoting Sunflower Elec. Power Corp. v. Sebelius*, No. 08-2575-EFM-DWB, 2009 WL 774340, at *2 (D. Kan. March 20, 2009)).

[6] *CGB Diversified Servs., Inc. v. Adams*, No. 20-2061-HLT-KGG, 2020 WL 1271772, at *1 (D. Kan. Mar. 17, 2020).

[7] *Thermal Sols., Inc.*, 2008 WL 2561098, at *1.  Defendant contends Plaintiff cites the wrong legal standard in its Memorandum in Support of its Motion for Expedited Discovery (ECF No. 6, at 4) because forensic imaging is warranted only where there is a "strong showing" that a party has defaulted in its obligations to preserve evidence, or where there are troubling discrepancies with respect to a party's document preservation, collection, or production. The Court disagrees. Defendant cites to cases not binding on this Court to support its assertion that the higher legal standard of "stronger showing" applies to expedited discovery for forensic imaging.  Defendant confuses the standard for expedited discovery with other courts' standard for compelling forensic imaging  For  purposes of determining whether to allow expedited discovery, this Court requires only a showing of "good cause."  *Id.*; *Alpine Atl. Asset Mgmt. AG*, 2008 WL 618627, at *1; *Sunflower Elec. Power Corp.*, 2009 WL 774340, at *2.

Third, the purpose of the expedited discovery is clear. Discovery concerning the data files and how Defendant used them after downloading the files from the Google Drive is crucial to the issues raised in Plaintiff's Motion for Preliminary Injunction (ECF No. 3). Plaintiff alleges that on October 31, 2022, November 4, 2022, and November 8, 2022, three of Defendant's employees with the domain names aadamczyk@automotive.com, cjohnson@adacautomotive.com, and twells@adacautomotive.com downloaded 79,467 files containing Plaintiff's intellectual property from the Google Drive. These downloads are not "mere conclusory allegations," as argued by Defendant. Defendant itself does not deny the employees downloaded the files, but maintains Defendant had the right to the downloaded files. However, Plaintiff contends Defendant is using mass-downloaded trade secrets in violation of the parties' LLC Agreement and requests imaging to preserve what files were downloaded and how they were used. To get the most out of forensic investigation, it is important to examine the devices at issue as soon as possible or to disallow use of the devices until the imaging can be completed. Unallocated space can be overwritten quickly when files are deleted, which then makes forensic analysis futile.[8]

Defendant argues Plaintiff waited nearly six months to initiate litigation, undercutting its argument that the drastic, emergency relief sought in this motion is necessary. Plaintiff counters that it had no knowledge of the downloads in October and November, and its President Wang only discovered the downloads when he inspected the server log of the Google Drive on March 27,

---

[8] *See Balboa Threadworks, Inc. v. Stucky*, No. 05-1157-JTM-DWB, 2006 WL 763668, at *3 (D. Kan. Mar. 24, 2006) ("[Forensic investigation] is one method of assuring the preservation of evidence since electronic evidence can easily be erased and manipulated, either intentionally or unintentionally (by overwriting through continued use of the computer).").

2023.[9]  This lawsuit was filed approximately three weeks later, on April 18, 2023.[10] Thus, the Court finds Plaintiff has sufficiently explained the delay and refuted Defendant's argument that Plaintiff should not be allowed emergency expedited discovery after delaying litigation.

Fourth, the burden that will be placed on Defendant by the limited and specifically prescribed expedited discovery allowed by this Order is reasonable and proportional to the needs of this case.  Defendant argues generally that forensic imaging would waste the parties' and the Court's time and resources.  But the burdens of forensic imaging are not out of the ordinary in these types of cases involving intellectual property.  Indeed, the burdens imposed upon Defendant are not that much greater than Defendant's normal preservation obligations.  This is especially true given that  Plaintiff has offered to pay the third-party vendor for imaging services and the Court will impose that obligation on Plaintiff as well as limit the scope of the forensic imaging, as detailed below. Further, Plaintiff has only requested that such images be made and retained by the vendor pending further agreement of the parties.  Fifth, Plaintiff's request for expedited discovery was appropriately timed relative to the typical discovery process.

"Good cause frequently exists in cases involving claims of infringement and unfair competition," and Plaintiff has sufficiently pled infringement and need for expedited discovery given the risks involved in delaying forensic imaging.[11]  Therefore, the Court finds good cause to allow expedited discovery in this case, however, the Court will limit the breadth of the expedited discovery requested as set out below.

---

[9] ECF No. 26-1, ¶¶ 6–7.

[10] ECF No. 1.

[11] *Thermal Sols., Inc.*, 2008 WL 2561098, at *1.

*B. Forensic Imaging is Necessary and Proper at This Stage, Subject to Certain Conditions*

Plaintiff requests forensic imaging of the personal cell phones, work computers, and electronic storage devices used between October 30, 2022 to present by Anne Adamczyk, Craig Johnson, and Trent Wells, the individuals allegedly responsible for downloading thousands of files containing Plaintiff's intellectual property.  Plaintiff also requests forensic imaging of the cell phone, work computer, and electronic storage device used by the individual at ADAC responsible for its relationship with D3, the subcontractor that worked on certain Proximity Access developments.

Plaintiff contends forensic imaging is necessary because it is the only method of testing whether the downloaded files have been used or modified as the imaging will preserve the system logs and document metadata of the hard drives and devices onto which the material was downloaded and through which it may have been transmitted.  Defendant contends Fed. R. Civ. P. 34 does not provide a routine right of access to a party's electronic information systems. Defendant cites cases finding forensic imaging is warranted only where there is a "strong showing" that a party has defaulted in its obligations to preserve evidence, or where there are troubling discrepancies with respect to a party's document preservation, collection, or production.[12]

A forensic image, or a mirror image, is "a forensic duplicate, which replicates bit for bit, sector for sector, all allocated and unallocated space, including slack space, on a computer hard drive."[13]  "Courts remain cautious about requests for inspection or requests for forensic or mirror imaging of computers, but many courts now consider such requests to be neither routine nor

---

[12] ECF No. 28, at 3.

[13] *Balboa Threadworks, Inc.*, 2006 WL 763668, at *3.

extraordinary."[14]  "[W]here trade secrets and electronic evidence are both involved, the Courts have granted permission to obtain mirror images of the computer equipment which may contain electronic data related to the alleged violation."[15]  Because electronic evidence can be manipulated or erased by overwriting through continued use of the device, forensic imaging can ensure the preservation of evidence.[16]

However, Courts have limited forensic imaging where "the request is extremely broad in nature and the connection between the computers and the claims in the lawsuit are unduly vague or unsubstantiated in nature."[17]  "When production is allowed, the Court 'should guard against undue intrusiveness resulting from inspecting or testing such systems.'"[18]

### i.    Computers and Storage Devices

The Court finds Plaintiff has shown good cause for forensic imaging of the work computers and storage devices utilized by Defendant's three employees allegedly responsible for downloading the files from the Google Drive, and the work computer and storage devices utilized by the individual at ADAC responsible for its relationship with D3.  Defendant argues forensic imaging is only appropriate where there is a "strong showing" that a party has defaulted in its

---

[14] *Robinson v. City of Arkansas City, Kan.*, No. 10-1431-JAR-GLR, 2012 WL 603576, at *17 (D. Kan. Feb. 24, 2012); *see also White v. Graceland Coll. Ctr. for Pro. Dev. & Lifelong Learning, Inc.*, No. CIV.A. 07-2319-CM, 2009 WL 722056, at *7 (D. Kan. Mar. 18, 2009); *Balboa Threadworks, Inc.*, 2006 WL 763668, at *3 ("It is not unusual for a court to enter an order requiring the mirror imaging of the hard drives of any computers that contain documents responsive to an opposing party's request for production of documents.").

[15] *Balboa Threadworks, Inc.*, 2006 WL 763668, at *3; *White*, 2009 WL 722056, at *7.

[16] *Balboa Threadworks, Inc.*, 2006 WL 763668, at *3.

[17] *Id.*; *see also McCurdy Grp. v. Am. Biomedical Grp., Inc.*, 9 Fed. App'x 822, 831 (10th Cir. 2001).

[18] *Robinson,* 2012 WL 603576, at *17 *(quoting* Fed. R. Civ. P. 34(a), Advisory Committee Notes (2006 amend.)).

obligations to preserve evidence, or where there are troubling discrepancies with respect to a party's document preservation, collection, or production, but that is a misstatement of this court's precedent.  As noted above, forensic imaging is also allowed, under appropriate circumstances, when trade secrets are involved, and the imaging is of data files relating to the alleged trade secret violations.

Here, Plaintiff alleges tens of thousands of documents containing its intellectual property were downloaded by Defendant's employees.  Defendant does not deny its employees downloaded the material; it argues it was permitted to do so under the LLC Agreement.  Forensic imaging of the computer and storage devices will preserve information necessary to determine which files were accessed and when; where they exist on a hard drive; whether the files were modified to generate new files; and potentially whether deletions have occurred, all of which is relevant to Plaintiff's claims and preliminary injunction motion.  Forensic imaging of these devices is therefore necessary to preserve information relevant to showing whether Defendant misappropriated the intellectual property at issue and violated the LLC Agreement.

For this reason, the Court will order that the work computers and storage devices used between October 30, 2022, to present by Anne Adamczyk, Craig Johnson, Trent Wells, and the individual at ADAC responsible for its relationship with D3 shall be made available for forensic imaging by an outside, neutral third-party vendor ("the Vendor"), at Plaintiff's expense, by June 9, 2023.  Such images shall be made and retained by the Vendor pending further agreement of the parties and no searches of the mirror images obtained through the use of this Order shall be conducted until the parties have agreed on and the Court has approved an appropriate ESI Protocol. As the court in *Balboa Threadworks, Inc.* found, any confidential information in the computers or storage devices which is not relevant to the claims or defenses of either party or to the subject

matter of this case can be protected by the existing Protective Order (ECF No. 31).[19]  The Vendor must maintain all mirrored images and do so in the strictest confidence, and not disclose any information obtained to unauthorized persons.  The Vendor must use the Vendor's best efforts to avoid unnecessarily disrupting the normal activities or business operations of the producing party while imaging the computers and storage devices.  In the event the parties cannot agree on the Vendor, the parties will each submit to the Court by May 26, 2023, the outside Vendor they propose, and the Court will select the Vendor to be utilized.

ii.   Personal Cell Phones

The Court finds Plaintiff has not shown good cause at this time for forensic imaging of Defendant's employees' personal cell phones.  Defendant asserts, and Plaintiff does not dispute, that "ADAC's employees do not have separate work and personal cell phones (only personal cell phones)."[20] While these employees' personal cell phones may have been used for some work purposes, it is unclear whether and to what extent they were actually used for work purposes.  Moreover, as previously stated by this Court in *Santana v. MKA2 Enterprises Inc.*, personal cell phones likely contain "a tremendous volume of information, including possibly text messages, email messages, phone logs, and photographs that are not at all relevant to the claims or defenses in this case."[21]  Plaintiff provides no legal authority for its request to examine the personal cell

---

[19] *Balboa Threadworks, Inc.*, 2006 WL 763668, at *4.

[20] ECF No. 28 at 2.

[21] No. 18-2094-DDC-TJJ, 2019 WL 130286, at *2 (D. Kan. Jan. 8, 2019); *See also Charles Schwab & Co., Inc. v. Highwater Wealth Mgmt., LLC*, No. 17-cv-00803-CMA-NYW, 2017 WL 4278494, at *7 (D. Colo. Sept. 27, 2017) (denying a request to conduct forensic imaging on a personal cell phone because such a search would "capture information that is not relevant at all to this action.").

phones of the three individuals, and it does not explain why it is necessary to conduct an inspection of their cell phones in addition to the computers and storage devices that those employees utilized.

The Court finds Plaintiff's request to image these employees' personal cell phones overly broad, unduly burdensome, and unduly intrusive given the disproportionate amount of personal information totally irrelevant to this lawsuit that is likely on these individuals' personal cell phones.[22]  Further, given the heavy reliance many cell phone users place upon their devices, the Court finds the request that these individuals produce their personal cell phones to a third-party for an unspecified amount of time overly burdensome at this stage in the case. Additionally, the Court questions whether Defendant's employees' personal cell phones are within the possession, custody, or control of Defendant such that it could be compelled to produce them for imaging.[23] Therefore, the Court denies Plaintiff's request for expedited forensic imaging of personal cell phones.

**IT IS THEREFORE ORDERED** that Plaintiff Ainstein AI, Inc.'s Emergency Motion for Expedited Discovery (ECF No. 5) is **GRANTED in part**, subject to the terms of this order.  The Court orders the work computers and storage devices used between October 30, 2022, to present by Anne Adamczyk, Craig Johnson, Trent Wells, and the individual at ADAC responsible for its

---

[22] *See McCurdy Grp. v. Am. Biomedical Grp., Inc.*, 9 Fed. App'x 822, 831 (10th Cir. 2001) (finding mere skepticism of wrongdoing does not support a "drastic discovery measure" such as forensic inspection).

[23] *See Noaimi v. Zaid*, 283 F.R.D. 639, 641 (D. Kan. 2012) ("The Federal Rules of Civil Procedure require production of documents which are 'under the possession, custody or control of the party upon whom the request is served. . . . [C]ourts have universally held that documents are deemed to be within the possession, custody or control if the party has actual possession, custody or control or has *the legal right to obtain the documents on demand*.'"); *Am. Maplan Corp. v. Heilmayr*, 203 F.R.D. 499, 501 (D. Kan. 2001).

relationship with D3 shall be made available for forensic imaging by an outside, neutral third-party Vendor ("the Vendor"), at Plaintiff's expense, by June 9, 2023.

**IT IS FURTHER ORDERED** that such images shall be made and retained by the Vendor pending further agreement of the parties and no searches of the mirror images obtained through the use of this Order shall be conducted until the parties have agreed on and the Court has approved an appropriate ESI Protocol.

**IT IS FURTHER ORDERED** that the Vendor must maintain all mirrored images and do so in the strictest confidence, and not disclose any information obtained to unauthorized persons. The Vendor must use the Vendor's best efforts to avoid unnecessarily disrupting the normal activities or business operations of the Producing Party while imaging the computers and storage devices.

**IT IS FURTHER ORDERED** that in the event that the parties cannot agree on the Vendor, the parties will each submit to the Court by May 26, 2023, the outside Vendor they propose, and the Court will select the Vendor to be utilized.

**IT IS FURTHER ORDERED** that the Court denies Plaintiff's motion for forensic imaging of personal cell phones.

The Court will be in contact with the parties to set a mutually agreeable time for a Rule 26 Conference to discuss the scope of expedited discovery to be allowed, an ESI Protocol, and other related discovery issues.

**IT IS SO ORDERED.**

Dated this 19th day of May, 2023.

_Teresa J. James_
Teresa J. James
U. S. Magistrate Judge